O

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **LISA L. RIGGS,** | )    **NO. SACV 13-1496-MAN** |
|       **Plaintiff,** | ) |
| | )    **MEMORANDUM OPINION** |
|      **v.** | )    **AND ORDER** |
| **CAROLYN W. COLVIN,** | ) |
| **Acting Commissioner of Social Security,** | ) |
| | ) |
|       **Defendant.** | ) |

On September 24, 2013, plaintiff filed a Complaint seeking review of the denial of her application for disability and disability insurance benefits ("DIB"). (ECF No. 1.) On November 4, 2013, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. (ECF No. 9.) On July 16, 2014, the parties filed a Joint Stipulation, in which plaintiff seeks an order reversing the Commissioner's decision and remanding this case for the payment of benefits; and the Commissioner requests that her decision be affirmed or, alternatively, remanded for further administrative proceedings. (ECF No. 15 at 22-25.) The Court has taken the parties' Joint Stipulation under submission without oral argument.

\\

\\

\\

1

2

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

3       On May 18, 2010, plaintiff filed an application for DIB.  (Administrative Record ("A.R.") 20.)

4  Plaintiff, who was born on October 6, 1970 (*id.* 120),[1] claims to have been disabled since February

5  16, 2010, as a consequence of:  peripheral neuropathy due to chemotherapy; lung restriction;

6  secondary pulmonary hypertension/hypoxemia; left-arm impairment -- tumor resection and

7  radiation age 8; interstitial cystitis due to chemotherapy agents; pain disorder related to tumor

8  resection/neuropathy; gastroparesis; Raynaud's disease; inability to sweat normally/regulate heat;

9  and mild cardiac dysfunction.  (*Id.* 145.)  Plaintiff has past relevant work experience as a

10 psychologist.  (*Id.* 28.)

11

12      After the Commissioner denied plaintiff's claim initially and upon reconsideration, plaintiff

13 requested a hearing.  (A.R. 20.)  On March 6, 2012, plaintiff, who was represented by counsel,

14 appeared and testified at a hearing before Administrative Law Judge Helen E. Hesse (the "ALJ").

15 (*Id.* 20, 29.)  Vocational expert ("VE") Alan Boroskin also testified.  (*Id.* 20.)  On May 23, 2012,

16 the ALJ denied plaintiff's claim (*id.* 20-29), and the Appeals Council subsequently denied plaintiff's

17 request for review of the ALJ's decision (*id.* 2-7).  That decision is now at issue in this action.

18

19                              ## SUMMARY OF ADMINISTRATIVE DECISION

20

21      In her May 23, 2012 decision, the ALJ found that plaintiff engaged in substantial gainful

22 activity on and after her alleged onset date from February 16, 2010, through May 14, 2010.  (A.R.

23 22).  The ALJ also determined that from May 15, 2010, through the date of the decision, plaintiff

24 had not engaged in substantial gainful activity.  (*Id.*)  The ALJ determined that plaintiff has the

25 severe impairments of history of childhood sarcoma in the left arm; sensory peripheral

26

27 _____

28      [1]  On the date the application was filed, plaintiff was 35 years old, which is defined as a
younger individual.  (A.R. 33); *see also* 20 C.F.R.§ 404.1563(c).

1   neuropathy; migraine headaches responsive to prescribed therapy; and somatoform pain disorder.

2   (*Id.*)  The ALJ concluded, however, that plaintiff does not have an impairment or combination of

3   impairments that meets or medically equals the listed impairments in 20 C.F.R. part 404, subpart

4   P, appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526).  (*Id.* 24.)

5

6         After reviewing the record, the ALJ determined that plaintiff has the residual functional

7   capacity ("RFC") to perform the following:  lift and carry 20 pounds occasionally and ten pounds

8   frequently; sit for six hours and stand or walk for two hours, with normal workday breaks, in an

9   eight-hour workday; never climb ladders, ropes, or scaffolds; only occasionally climb stairs, bend,

10  stoop, balance, kneel, crouch, and crawl; never perform forceful gripping, grasping, twisting, or

11  turning with the left upper extremity; never work at unprotected heights; avoid concentrated

12  exposure to dust, fumes, gases, and chemicals; never perform jobs requiring hypervigilance; and

13  not in charge of the safety operations of others.  (A.R. 25.)  In making this finding, the ALJ

14  considered the medical evidence and opinions of record (*id.* 25-28) as well as the subjective

15  symptom testimony of plaintiff, whom the ALJ found was not credible to the extent her statements

16  were inconsistent with the RFC (*id.* 28).  The ALJ gave significant weight to the opinion of the

17  medical expert, Dr. Steven Gerber, who is board certified in internal medicine and cardiovascular

18  disease.  (*Id.* 27.)  She gave little weight to the opinion of plaintiff's two treating physicians, Dr.

19  Jack S. Gutman, D.O, and Dr. Smita Bhatia, M.D., M.P.H, who began treating plaintiff in 1998, and

20  2006, respectively.  (*Id.*)

21

22        Based on the testimony of the VE, the ALJ found that plaintiff was able to perform her past

23  relevant work as a psychologist.  (A.R. 28.)  Accordingly, the ALJ found that plaintiff was not

24  under a disability from February 16, 2010, through the date of the decision.  (*Id.* 29.)

25  \\

26  \\

27  \\

28  \\

3

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (citation omitted). The "evidence must be more than a mere scintilla but not necessarily a preponderance." Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

Although this Court cannot substitute its discretion for that of the Commissioner, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y of Health and Hum. Servs., 846 F.2d 573, 576 (9th Cir. 1988); see also Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn, 495 F.3d at 630; see also Connett, 340 F.3d at 874. The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (quoting Stout v. Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch, 400 F.3d at 679.

**DISCUSSION**

Plaintiff alleges three sources of error.  First, plaintiff claims the ALJ erred in evaluating the opinions of her treating physicians, Smita Bhatia, M.D., M.P.H, and Jack H. Gutman, D.O., and the state agency physician, D. Chan, M.D.  (Joint Stip. at 3.)  Second, plaintiff claims the ALJ erred in her assessment of plaintiff's RFC.  (*Id.*)  Third, plaintiff claims the ALJ erred in evaluating plaintiff's credibility.  (*Id.*)

## I. The ALJ Failed to Provide Specific and Legitimate Reasons for Rejecting the Opinions of Plaintiff's Treating Physicians, Drs. Gutman And Bhatia.

### A. Legal Standard

An ALJ is obligated to take into account all medical opinions of record.  20 C.F.R. §§ 404.1527(c).  It is the responsibility of the ALJ to resolve conflicts in medical testimony and analyze evidence.  Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989).  In the hierarchy of physician opinions considered in assessing a social security claim, the opinion of a treating physician is entitled to greater weight than that of an examining physician, the opinion of an examining physician is entitled to greater weight than that of a non-examining physician, and the weight afforded a non-examining physician's testimony depends on the degree to which he provided supporting explanations for his opinions.  Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014) (citing Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008)); *see also* 20 C.F.R. § 404.1527(c).  Furthermore, the opinions of treating physicians like Drs. Bhatia and Gutman, who have seen plaintiff for more than six and 13 years respectively, are entitled to the greatest weight, because treating physicians are hired to cure and have a better opportunity to know and observe the claimant.  Magallanes, 881 F.2d at 751; *see also* 20 C.F.R. § 404.1527(c)(2)(i) ("When the treating source has seen [the plaintiff] a number of times and long enough to have obtained a longitudinal picture of [her] impairment, [the Commissioner] will give

5

1   the source's opinion more weight than . . . if it were from a nontreating source.").

2

3       When a treating or examining physician's opinion is not contradicted by another physician,

4   it may be rejected only for "clear and convincing" reasons.  Ghanim v. Colvin, 763 F.3d 1154,

5   1160-61 (9th Cir. 2014); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  When, as here, a

6   treating physician's opinion is contradicted by another doctor -- in this case, Dr. Boroskin, the

7   medical expert who testified at the hearing after reviewing plaintiff's records -- the ALJ may reject

8   the opinion of the treating physician if doing so is supported by "specific and legitimate" reasons

9   identified in the decision and supported by substantial evidence in the record.  Ghanim, 763 F.3d

10  at 1161; Garrison, 759 F.3d at 1012; see also Ryan, 528 F.3d at 1198.

11

12      "The opinion of a nonexamining physician cannot by itself constitute substantial evidence

13  that justifies the rejection of the opinion of . . . a treating physician."  Lester, 81 F.3d at 831; see

14  Pitzer v. Sullivan, 908 F.2d 502, 506 n.4 (9th Cir. 1990) (finding that the nonexamining physician's

15  opinion "with nothing more" did not constitute substantial evidence).  However, "[w]here the

16  opinion of the claimant's treating physician is contradicted, and the opinion of a nontreating

17  source is based on independent clinical findings that differ from those of the treating physician,

18  the opinion of the nontreating source may itself be substantial evidence."  Andrews, 53 F.3d at

19  1041.  Independent clinical findings include "(1) diagnoses that differ from those offered by

20  another physician and that are supported by substantial evidence, or (2) findings based on

21  objective medical tests that the treating physician has not herself considered."  Orn, 495 F.3d at

22  632 (internal citations omitted).

23

24          **B.    Analysis**

25

26      Plaintiff contends that the ALJ improperly dismissed the opinions of her two treating

27  physicians, Smita Bhatia, M.D., M.P.H., and Jack Gutman, D.O., who began treating plaintiff in

28  2006, and 1998, respectively.  (Joint Stip. at 4-5; see also A.R. 769 (1/26/2011 - Dr. Gutman

6

states that he has seen plaintiff for treatment 50 times since 1998), 863 (1/18/11 - Dr. Bhatia states that she has been treating plaintiff from January 20, 2006 through the present).)  Plaintiff also contends that the ALJ improperly ignored the opinion of the State agency non-examining physician, Dr. Chan.  (Joint Stip. at 6.)

### 1.    Dr. Bhatia

On October 26, 2010, in a "Medical Assessment Of Ability To Do Work-Related Activities Physical," Dr. Bhatia opined that plaintiff could lift and carry five pounds occasionally and five pounds frequently; sit for two hours (between 1-33% of the time), stand for one hour (1-33% of the time), and walk for half an hour (between 1-33% of the time), in an eight-hour work day. (A.R. 763-64.)  On February 1, 2011, Dr. Bhatia completed an "Attending Physician Statement" indicating the same.[2]  (*Id.* 836-38.)

The ALJ gave little weight to Dr. Bhatia's functional assessments for the following reasons: (1) despite plaintiff's significant complaints of migraines, Dr. Bhatia makes no mention of them; (2) Dr. Bhatia's opinions indicate that plaintiff would have to lie down or rest for more than half the work day; (3) Dr. Bhatia found that plaintiff required oxygen for "any physical exertion," which was inconsistent with plaintiff's description of her activities and "significantly more limited use of supplemental oxygen" (A.R. 23 (citing *id.* 763, 836, 838)); and (4) in her first assessment of plaintiff, Dr. Bhatia found plaintiff equally restricted in her left and right upper extremities (*id.* 26 (citing *id.* 764)), "despite evidence of significantly greater limitations on the left (due to plaintiff's childhood sarcoma)" (*id.* 26 (citing *id.* 686 (noting that Dr. Bhatia found limited function in the left arm as a result of tumor resection and radiation therapy, with limited range of motion of the left upper extremity and significantly limited dexterity)).  The ALJ also noted that Dr. Bhatia determined plaintiff was "temporarily or permanently disabled, was unable to return to work in

---

[2]  The latter assessment indicated the percent of the time that could be spent engaging in the activity, rather than the number of total hours.  (*Compare* A.R. 763 *with id.* 837.)

the foreseeable future, should not work, could not sustain work activity, and was unable to work due to her impairments and medication." (*Id.* 27 n.3.)  The ALJ gave little weight to these opinions in view of the other inconsistencies mentioned and because they "infringe upon the discretion of the Commissioner."[3]  (*Id.*)

The Court does not find these reasons to be specific and legitimate.[4]  First, although Dr. Bhatia does not specifically mention plaintiff's migraines in the two functional assessments noted by the ALJ (A.R. 763-66, 837-38), Dr. Bhatia repeatedly mentions plaintiff's migraine headaches in her treating records (*see, e.g.*, *id.* 686, 810, 834, 911).  In fact, in other documents in which Dr. Bhatia discusses plaintiff's various conditions, she lists myriad conditions, several of which, in addition to plaintiff's history of migraines, were not included by Dr. Bhatia as "diagnoses" in the functional limitation forms (e.g., atypical lobular hyperplasia of left breast; hypercholesterolemia; carotid artery atherosclerosis; history of subclinical hypothyroidism and thyroid cyst and nodule; history of mitral valve prolapse; history of intermittent chest pain and palpitations; and history of osteopenia and Vitamin D deficiency).  (*See, e.g., id.*)  Dr. Bhatia's failure to specifically list all of plaintiff's conditions in her functional assessments (which asked, "What is this patient's medical diagnosis(es)?") is not a legitimate reason to find that those opinions are, as characterized by the ALJ, "inconsistent."  (*See id.* 26 (deeming Dr. Gutman's failure to mention migraines an

---

[3]  The ALJ also acknowledged, however, that Dr. Bhatia's opinion that "side effects from medication could reasonably interfere with the ability to function in the work place" was "a conclusion not inconsistent with the evidence in the record."  (A.R. 27 n.3.)

[4]  Defendant's arguments -- which focus on the number of yearly visits plaintiff made to Dr. Bhatia (an oncologist); plaintiff's daily activities; plaintiff's claim that she could sit for only 30 minutes at a time, notwithstanding her testimony that she believed she could sit through a church service of an unstated length; plaintiff's report on November 30, 2010, to one of Dr. Bhatia's colleagues that she had no chest pain or shortness of breath"; and Dr. Bhatia's conservative treatment of "medication, rest, warm water exercise, diet, [and] yoga" (Joint Stip. at 6-8) -- are unpersuasive, because the ALJ did not cite these arguments as reasons for discounting Dr. Bhatia's opinion and the Court is required "to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ -- not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking."  *See* Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1225 (9th Cir. 2009); Stout, 454 F.3d at 1054 (stating that the court is "constrained to review the reasons the ALJ asserts" for the denial of benefits and "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision") (quoting Connett, 340 F.3d at 874; Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir. 2001)).

inconsistency, and comparing Dr. Bhatia's failure to mention migraines to Dr. Gutman's failure to do so).)

The ALJ also states that Dr. Bhatia's opinions suggest that plaintiff would have to lie down or rest for more than half the work day.  (A.R. 26.)  Although Dr. Bhatia limits plaintiff with regard to sitting, standing, and walking during an eight-hour work day, nowhere in her assessment does Dr. Bhatia state that for the rest of the work day plaintiff needs to be lying down or resting.  Accordingly, this is not a specific and legitimate reason to discredit the opinions of treating physician.

The ALJ finds that Dr. Bhatia's statement that "oxygen was required for 'any physical exertion'" is an overly broad restriction in the light of plaintiff's description of her activities and "significantly more limited use of supplemental oxygen."  (A.R. 23 (citing 763, 836, 838).)  Preliminarily, the ALJ does not indicate where plaintiff discusses a "more limited use of supplemental oxygen."  (*Id.* 23.)  The Court's review of the record shows that, other than to briefly mention that when she takes morphine she also has to take oxygen because of her hypoxia, plaintiff did not otherwise testify at the hearing about her use of supplemental oxygen.  (*Id.* 52.)  In her Pain Questionnaire and supplemental letter, plaintiff indicated that:  she needs to stop for her oxygen treatment 3-4 times a week; her oxygen levels sometimes drop unpredictably, but "often after climbing hills or stairs or when I become overheated"; and if she lifts more than ten pounds with both arms and it is warm out, she becomes winded and her oxygen levels drop.  (*Id.* 167, 169, 172, 174.)  Dr. Bhatia indicated the following in a treatment note:

> [Plaintiff] has had decreased oxygen saturation down to the low 80s and chest tightness and palpitations and increased heart rate on exertion.  She has a pulse oximeter at home now, and she manages this with intermittent oxygen therapy.

9

(*Id.* 834.)  The Court has found nothing in the record to support the ALJ's conclusion that Dr. Bhatia's statement that plaintiff required oxygen "for any physical exertion" was overly broad or that plaintiff had anywhere indicated a "significantly more limited use" of oxygen.  Accordingly, this was not a specific and legitimate reason to discount Dr. Bhatia's opinions.

Finally, the ALJ compares Dr. Bhatia's two assessments, completed several weeks apart, and notes that, despite evidence in the record demonstrating that plaintiff has a more significantly limited range of motion in her left upper extremity than in the right (A.R. 26 (citing *id.* 174-75, 306, and hearing testimony)), Dr. Bhatia in the earlier of her assessments indicated the same limitations for plaintiff's right and left extremities (*id.* 764).  Thus, in her October 26, 2010, assessment, Dr. Bhatia indicated that, based on plaintiff's severe neuropathy, plaintiff could only occasionally:  grasp, reach, finger (fine manipulation); handle (gross manipulation); and feel, and push/pull with either hand.  (*Id.*)  In a February 1, 2011, disability claim form, Dr. Bhatia assessed only fine finger movements (never for the left; occasionally for the right); hand/eye coordinated movements (occasionally for both right and left); and pushing and pulling (never for the left; occasionally for the right).  (*Id.* 837.)  Dr. Bhatia again indicated that plaintiff's severe neuropathy supported her opinions, as well as plaintiff's pulmonary dysfunction, GI hypersensitivity, recurrent UTIs, and chronic pain/fatigue.  (*Id.* 836.)  Any differences in these two assessments, to the extent they are measuring the same tasks and can even be compared, are minimal.  (Joint Stip. at 4.)  Accordingly, this was not a specific and legitimate reason to discount Dr. Bhatia's opinions, which reflect a treatment relationship spanning more than six years.  Remand is thus warranted on this issue.

### 2.    Dr. Gutman

On January 26, 2011, Dr. Gutman completed a form entitled "Medical Assessment Of Ability To Do Work-Related Activities Physical," in which he indicated that, because of plaintiff's neuropathy, plaintiff could:  occasionally lift and carry up to seven and a half pounds; sit for two

hours; stand for one hour; walk for half an hour during an eight-hour work day; and only occasionally perform fine manipulation with her right and left hand. (A.R. 769-70.) Three weeks later, on February 15, 2011, Dr. Gutman completed a "Disability Claim Form" for Unum, plaintiff's long term disability insurance provider, in which he indicated that plaintiff could: lift and carry ten pounds frequently, 20 pounds occasionally, and never more than 25 pounds; sit, stand, and walk between 1/3 and 2/3 of the time; and frequently perform fine manipulation with her right hand but never with her left hand. (*Id.* 853-54.) Unlike his January 26, 2011 opinion, Dr. Gutman's February 15, 2011 opinion was not limited to identifying plaintiff's abilities and limitations during an eight-hour workday.

The ALJ found that Dr. Gutman's assessments of plaintiff's limitations were not credible, because he suggested that plaintiff would have to lie down or rest for four and a half hours during an eight-hour work day and this suggestion was not consistent with plaintiff's own statements. (A.R. 26 (citing *id.* 769-70).) However, nowhere in his opinions does Dr. Gutman state that plaintiff needs to lie down or rest for four hours of an eight-hour work day. Instead, he indicates that plaintiff retains the capacity to: sit, stand, and walk between 34% and 66% of the time generally; and, in the context of an eight-hour workday, sit for two hours, stand for one hour, and walk for half an hour. (*Id.* 769-70.) Accordingly, the ALJ's finding that Dr. Gutman was not credible, because he suggested that plaintiff would have to lie down and rest for four and a half hours during an eight-hour workday was not supported by substantial evidence.

The ALJ also found Dr. Gutman's assessments less than credible because he did not include migraines among his diagnoses in either assessment. (A.R. 26.) Again, the ALJ's finding is not supported by substantial evidence. On the first page of his February 15, 2011 assessment, Dr. Gutman includes migraines in a list of plaintiff's symptoms. (*Id.* 852.) Accordingly, the ALJ's second reason for discrediting Dr. Gutman's opinions was not a legitimate reason supported by substantial evidence.

1    The ALJ further noted that Dr. Gutman's opinion in his January 26, 2011 assessment that

2 plaintiff is limited to occasional fine manipulation with her right, as well as her left, hand was not

3 supported by the objective findings in the record regarding plaintiff's right upper extremity.  (A.R.

4 26 (citations omitted).)  Dr. Gutman's limitation to occasional fine manipulation with plaintiff's

5 right, as well as her left, hand was justified by Dr. Gutman based on plaintiff's neuropathy -- a

6 condition amply demonstrated in the record.  Accordingly, this was not a specific and legitimate

7 reason to discount Dr. Gutman's opinion.

8

9    Lastly, the ALJ discounted Dr. Gutman's opinions because of inconsistencies between Dr.

10 Gutman's January 26, 2011 and February 15, 2011 assessments.  (A.R. 26.)  Specifically, in his

11 January 26, 2011 assessment of plaintiff's ability to do work-related activities, Dr. Gutman found

12 that plaintiff could stand for no more than one hour and walk no more than ½ hour in an eight-

13 hour workday.  (*Id.* 769-70.)  Three weeks later, on a "Disability Claim Form," Dr. Gutman

14 indicated that plaintiff could generally stand and/or walk between 34%  and 66% of the time (or

15 between 2.72 and 5.28 hours).  (A.R. 26 (citing *id.* 769-70, 853).)  It is not clear from the record,

16 however, that these inconsistencies reflect on Dr. Gutman's credibility.  Whereas Dr. Gutman's

17 first opinion concerns plaintiff's ability to do work-related activities, his second opinion concerns

18 plaintiff's abilities more generally, and the record consistently shows that plaintiff's conditions are

19 more difficult to manage and, as a result, more disabling when she is working eight hours a day

20 than when she is not working.  (*Se e.g.*, A.R. 912 ("[S]ince being placed on fully disability,

21 [plaintiff's] health status improved; however her symptoms become markedly exacerbated when

22 she over-exerts herself, such as would be required should she return to her work duties . . . her

23 work has had a significantly detrimental impact on her health status."), 852 (Dr. Gutman opines

24 that plaintiff's treatment plan includes a reduced workload); *compare also id.* 54, 171, 172

25 (plaintiff's statements about her abilities to help around the house while not working) *with id.* 62,

26 171, 172 (plaintiff's statements about her abilities to help around the house while she was

27 working).)  Accordingly, the fact that Dr. Gutman gave two different answers to two different

28 questions was not a legitimate reason supported by substantial evidence for discrediting Dr.

12

1  Gutman's opinions.[5] Further, to the extent that the inconsistencies created ambiguity, the ALJ was

2  required to seek clarification.  *See* Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001)

3  (ALJs have an independent duty to fully and fairly develop the record, which is triggered by

4  ambiguous evidence or by a record that is inadequate to allow for proper evaluation of the

5  evidence).   Accordingly, the ALJ shall reevaluate Dr. Gutman's opinion on remand and, if

6  necessary, take appropriate actions to develop the record.

7

8              **3.     Dr. Chan**

9

10       Dr. Chan found plaintiff could lift ten pounds occasionally and frequently; could stand

11  and/or walk "*at least* two hours" in an eight-hour workday; and could sit about six hours in an

12  eight-hour workday.  Plaintiff notes that Dr. Chan's limitation to lifting ten pounds was consistent

13  with the lifting limitations of her treating physicians.  (Joint Stip. at 6.)  The ALJ gave Dr. Chan's

14  assessment "little weight," because Dr. Chan "overstates the claimant's standing and walking

15  abilities."  (A.R. 27 (citing *id.* 692-97).)

16

17       The stand/walk options Dr. Chan could have selected on the form he completed were:  (1)

18  "less than 2 hours in an 8-hour workday"; (2) "at least 2 hours in an 8-hour workday"; (3) "about

19  6 hours in an 8-hour workday"; and (4) "medically required hand-held assistive device is

20  necessary for ambulation."  (A.R. 693.)  Given these options, the option Dr. Chan chose -- "at

21  least 2 hours in an 8-hour workday" -- would seem to imply that plaintiff had the ability to stand

22  and/or walk for at least two but less than six hours in an eight-hour workday.  Dr. Chan indicated

23

24      _____

25      [5]  Further, even if the Court were accept the legitimacy of the ALJ's interpretation of the inconsistency between Dr. Gutman's opinions, it could not, in and of itself, provide a sufficient basis for discrediting Dr. Gutman's opinion. *Cf.* Burell v. Colvin, 775 F.3d 1133, 1139-40 (9th Cir. 2014) (in view of the record as a whole and the ALJ's other errors, the ALJ's articulation of "one weak reason" for discrediting the plaintiff was not a sufficient basis for rejecting the plaintiff's testimony); *see also* Lingenfelter, 504 F.3d at 1035 ("we must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion and may not affirm simply by isolating a specific quantum of supporting evidence").

1  that his conclusions are not "significantly different" from those of the treating physicians.  (*Id.*

2  696.)  However, his conclusion that plaintiff can stand and/or walk for more than two hours in an

3  eight-hour workday is inconsistent with the opinion of Dr. Bhatia, who opined that plaintiff can

4  stand and/or walk for no more than one hour in an eight-hour workday (*id.* 763), and with the

5  January 2011 opinion of Dr. Gutman that plaintiff can neither stand nor walk for more than one

6  hour in an eight-hour workday (*id.* 769).  The inconsistency between Dr. Chan's opinion and the

7  opinions of plaintiff's treating physicians was a specific and legitimate reason for discrediting his

8  opinion.  *See* Garrison, 759 F.3d at 1012 (discussing hierarchy of physicians' opinions); *see also*

9  20 C.F.R.§ 404.1527(c).

10

11  **II.**     **THE ALJ'S ASSESSMENTS OF PLAINTIFF'S CREDIBILITY AND RFC.**

12

13       In her other two claims, plaintiff contends that the ALJ erred in determining plaintiff's RFC,

14  because:  (1)  she did not properly evaluate plaintiff's subjective complaints of pain (Joint Stip.

15  at 18-20, 22); and (2) she did not take into account the non-exertional limitations caused by

16  plaintiff's pain and medication side effects, which affect her ability to perform her past work as

17  a psychologist (*id.* at 13-15, 17).  As these two claims are closely related, the Court considers

18  them together.

19

20       **A.**     **Plaintiff's Credibility**

21

22       Once a disability claimant produces objective medical evidence of an underlying impairment

23  that is reasonably likely to be the source of claimant's subjective symptom(s), all subjective

24  testimony as to the severity of the claimant's symptoms must be considered.  Moisa v. Barnhart,

25  367 F.3d 882, 885 (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991); *see also*

26  20 C.F.R. § 404.1529(a) (explaining how pain and other symptoms are evaluated).  "[U]nless an

27  ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find

28  an applicant not credible by making specific findings as to credibility and stating clear and

14

1    convincing reasons for each." <u>Robbins</u>, 466 F.3d at 883.  The factors to be considered in weighing

2    a claimant's credibility include:  (1) the claimant's reputation for truthfulness; (2) inconsistencies

3    either in the claimant's testimony or between the claimant's testimony and her conduct; (3) the

4    claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and

5    third parties concerning the nature, severity, and effect of the symptoms of which the claimant

6    complains.  *See* <u>Thomas v. Barnhart</u>, 278 F.3d 947, 958-59 (9th Cir. 2002); *see also* 20 C.F.R. §

7    404.1529(c).

8

9         Here, the ALJ concluded that "after careful consideration of the evidence, . . . [plaintiff]'s

10   medically  determinable  impairments  could  reasonably  be  expected  to  cause  the  alleged

11   symptoms." (A.R. 28.)  The ALJ cited no evidence of malingering by plaintiff but determined that

12   plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms

13   are not credible to the extent they are inconsistent with the above [RFC] assessment." (*Id.*)

14   Accordingly, the ALJ's reasons for finding that plaintiff was not credible with respect to her

15   subjective symptom and pain testimony must be "clear and convincing."

16

17        Plaintiff alleges that she experiences pain in her left arm, neck, legs, and bones; migraine

18   headaches; pins and needles in her feet; and fatigue. (A.R. 26 (citations omitted).)  Specifically,

19   plaintiff stated that she:  has migraine headaches twice a month with each one lasting two to five

20   days (*id.* 58); experiences constant pain that makes it difficult to concentrate and attend to tasks

21   (*id.* 57, 169), daily nausea, and inability to eat solid foods (*id.* 168); always feels like she has a

22   bladder infection and, when she was working, had to use the bathroom every 30-60 minutes and

23   would experience "spasms" trying to urinate (*id.* 60); and has good days and bad days, with four

24   to six days a month being so bad that she is confined to bed all day (*id.* 63).  She stated that she

25   can lift no more than ten pounds with both arms, sit for 30 to 40 minutes at a time, and stand

26   without support for five minutes.  (*Id.* 175.)  She testified that she has difficulty sitting and,

27   although she could sit through a church service, would have difficulty sitting through a funeral

28   service and would be unable to sit through a movie without getting up once or twice.  (*Id.* 62.)

15

She testified that, when she was working full-time, she could not participate in her household life and relied on her husband to do all the cooking, cleaning, pet care, grocery shopping, laundry, etc. (*Id.* 62)

Plaintiff testified that she takes Klonopin every night, Topamax daily for migraine prevention and pain relief, Indocin most days, and, for breakthrough pain, including migraines, she takes Vicodin, morphine, and/or ketamine. (A.R. 50-51.) These medications make her forgetful, groggy, less articulate and impair her memory and judgment. (*Id.* 50, 174.) The morphine precludes her from driving or thinking coherently and worsens her hypoxia, which requires oxygen. (*Id.* 50.) Plaintiff similarly stated that the ketamine helps "when the pain spirals and flares up it feels like my legs are on fire, and like my muscles are being pulled from the bone," but it "creates perceptual alterations, which alter my ability to drive, be in crowds, lights, etc." (*Id.* 173.)

The ALJ rejected plaintiff's testimony regarding the severity of her pain symptoms and medication side effects, because: (1) plaintiff's subjective complaints and alleged limitations are not corroborated by the evidence of record; (2) plaintiff's ability to perform a "wide variety of activities indicates that [she] also has the ability to perform appropriate work activities on an ongoing and daily basis"; and (3) plaintiff was "able to work at above substantial gainful level activities after her alleged onset date." (A.R. 26.)

### 1.    Objective Medical Evidence

The ALJ cited her reasons for discrediting plaintiff's treating physicians as the basis for her determination that the objective medical evidence did not support plaintiff's subjective symptom testimony. (*See* A.R. 28.) However, as explained above, the reasons the ALJ cited for discrediting plaintiff's treating physicians were not specific and legitimate reasons supported by substantial evidence.

Further, rather than undermining plaintiff's subjective symptom testimony, the 900-page record contains multiple reports, assessments, and notes from myriad specialists, in addition to plaintiff's two treating physicians, which overwhelmingly support plaintiff's allegations of both physical and mental impairments. For example, the record includes a four-page letter from Dr. Bhatia, dated June 15, 2012 -- over six years after Dr. Bhatia began treating plaintiff -- that describes plaintiff's impairments and limitations in detail. In part, Dr. Bhatia's letter states:

> [Plaintiff's] very significant neuropathy, chronic severe neuropathic pain, and migraine headaches require the administration of numerous analgesics for pain management in doses that result in impaired concentration and reaction time, and an impaired ability to render the considered judgments required to diagnose and treat patients seeking professional psychological care. Additionally, [she] experiences significant urinary frequency, urgency, and bladder pain as a result of her interstitial cystitis and neurogenic bladder, requiring multiple medications and frequent voiding that necessitates excusing herself during sessions with clients, significantly interrupting the flow and dynamic of psychotherapy sessions

> [Plaintiff] also has chronic fatigue and limited exercise tolerance as a result of her restrictive lung disease and exercise induced pulmonary hypertension. . . . She also suffers from gastrointestinal hypomotility as a result of her neuropathy, with associated delayed gastric emptying and constipation, impairing her ability to consume many common foods, and also limiting her ability to maintain adequate nutritional intake. She has limited function in her left arm as a result of tumor resection and radiation therapy, with limited range of motion and significantly limited dexterity. . . . She requires oxygen for any physical exertion above baseline activities, due to her exercise-induced pulmonary hypertension and related low oxygen saturation levels (which drop below 90% with exertion). Her neuropathy predisposes her to pre-syncope gait instability and the inability to sweat normally,

resulting in heat and cold intolerance and impaired temperature stability. She benefits from warm-water exercise, yoga, and meditation to control this. She also has significant chronic pain requiring multiple medications that impair her judgment, concentration, and reaction time and prevent her from practicing or teaching clinical psychology . . . .

[S]ince being placed on full disability, [plaintiff's] day-to-day health status improved; however, her symptoms become markedly exacerbated when she over-exerts herself, such as would be required should she return to her work duties. Therefore, I have strongly recommended that she refrain from working, as her work has had a significantly detrimental impact on her health status. Of note, her health status initially improved and then stabilized following her placement on fully disability status, which allows her the opportunity to obtain adequate rest, take medication as needed for symptom control, engage in yoga, warm water exercise, and consumption of a healthy diet with adequate caloric intake, and in general manage her chronic health conditions in a way that optimizes her health to the extent possible given the severity of these conditions.

Based on my experience caring for many childhood cancer survivors who have received similar therapy and based on [plaintiff's] entire medical evaluation and my observations of her medical status over time, I must conclude that [her] prognosis is guarded. The best that can be hoped for, with proper rest and medical management, is stabilization of her current health status. Unfortunately, it is very unlikely that her multiple adverse sequelae related to her cancer treatment will improve over time, and in fact these health conditions are typically chronic and progressive. I have attached citations from the medical literature in support of my conclusions.

18

1    (A.R. 909-912.)

2

3        In sum, the objective medical evidence corroborated plaintiff's description of her symptoms

4    and medication side effects, and the ALJ's flawed assessment of the copinions of plaintiff's treating

5    physicians was not a clear and convincing reason for finding plaintiff's testimony less than

6    credible.   Accordingly, the ALJ erred in citing the objective medical evidence as a reason for

7    discounting plaintiff's testimony.

8

9                    **2.    Daily Activities**

10

11       The ALJ also cited plaintiff's activities of daily living as inconsistent with plaintiff's testimony.

12   Specifically, the ALJ noted that plaintiff: "is active with yoga;" reads; watches television; uses a

13   computer; does laundry; prepares simple meals; washes dishes; handles bills; deadheads flowers;

14   takes occasional walks; exercises at the gym or in a pool; drives; shops with a friend; does

15   errands, including getting pet food from the farm supply; goes to the library; takes the dry

16   cleaning; and goes to the nursery.  (A.R. 28 (citations omitted).)  The ALJ concluded that the

17   ability to perform these activities "indicates that [plaintiff] also has the ability to perform

18   appropriate work activities on an ongoing and daily basis." (*Id.*)

19

20       However, the record shows that plaintiff does not perform all of these activities daily, does

21   not perform household chores by herself, and performs the limited exercises identified by the ALJ

22   as part of the treatment plan prescribed by her treating physicians, Drs. Gutman and Bhatia.  For

23   instance, although plaintiff has no problem putting the clothes in the washing machine or moving

24   them to the dryer, she explained that moving the clothes out of the dryer before they wrinkle,

25   stooping to the dryer to lift and fold the wash is tiring, and she needs to sit down for five minutes

26   after undertaking such activity. (A.R. 172).  Although she enjoys cooking, chopping, lifting pans,

27   and washing heavy dishes drains her and leaves her unable to do much else, so she cooks simple

28   meals, one item at a time, and her husband helps with the dishes. (*Id.* 171.)  Although plaintiff

1   has a gardener doing yard work, once a month she clips dead flowers, and her husband sweeps

2   them up.  (*Id.* 177.)  She goes to the gym for pool therapy exercises (*id.* 164); shops biweekly

3   with a friend who helps with the cart (*id.* 172); when she shops for pet food, she takes items one

4   at a time and asks for help lifting them into the car (*id.*); and her husband takes care of the

5   animals (*id.*).  Finally, plaintiff testified that while she was working, she was unable to do any of

6   the household chores or shopping, and it was only after she stopped working that she was able

7   to "participate in some meaningful way in . . . household life."  (*Id.* 62.)

8

9        An ALJ may rely on a claimant's daily activities to support an adverse credibility

10  determination when those activities:  (1) "contradict [claimant's] other testimony"; or (2) "meet

11  the threshold for transferable work skills."  Orn, 495 F.3d at 639.  As a result, a plaintiff's

12  credibility may be discounted if he or she "is able to spend a substantial part of his or her day

13  performing household chores or other activities that are transferable to a work setting."  Smolen

14  v. Chater, 80 F.3d 1273, 1284 n.7 (9th Cir. 1996).  A claimant, however, need not be "utterly

15  incapacitated to be eligible for benefits . . . and many home activities are not easily transferable

16  to what may be the more grueling environment of the workplace, where it might be impossible

17  to periodically rest or take medication."  Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) (internal

18  citations omitted); Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) (an ability to engage

19  in some physical activities is not necessarily inconsistent with a finding of disability).

20

21       Here, there is no evidence plaintiff spends a "substantial part" of her day performing some

22  or all of these activities.  Moreover, the ALJ fails to specify how plaintiff's ability to occasionally

23  do a few household chores translates into the ability to perform full-time work and renders

24  plaintiff's testimony about her pain and symptoms unworthy of belief.  *See* Vertigan v. Halter, 260

25  F.3d 1044, 1050 (9th Cir. 2001) (noting that the "mere fact that a plaintiff has carried on certain

26  daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not

27  in any way detract from her credibility as to her overall disability"); Smolen, 80 F.3d at 1283 n.7

28  ("The Social Security Act does not require that claimants be utterly incapacitated to be eligible for

1  benefits, and many home activities may not be easily transferable to a work environment where
2  it might be impossible to rest periodically or take medication.").   Accordingly, plaintiff's daily
3  activities did not provide a clear and convincing reason for discounting plaintiff's subjective
4  complaints.

5

6                           **3.      Work After Alleged Onset Date**

7

8          The ALJ discounted plaintiff's credibility because "while she states she was provided with
9  special work conditions, [plaintiff] was able to work at above substantial gainful level activities
10  after her alleged onset date."  (A.R. 28 (citations omitted).)   Specifically, the ALJ found that
11  plaintiff engaged in substantial gainful activity after her alleged onset date, from February 16,
12  2010, through May 14, 2010.  (*Id.* 22).  The ALJ also determined that from May 15, 2010, through
13  the date of the decision, plaintiff had not engaged in substantial gainful activity.  (*Id.*)

14

15          If a plaintiff can engage in substantial gainful activity, she is not disabled within the
16  meaning of the Social Security Act.  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999); 20
17  C.F.R. § 404.1571.  Substantial gainful activity is work activity that "involves doing significant
18  physical or mental activities" on a full-or part-time basis, and "is the kind of work usually done for
19  pay or profit."  20 C.F.R. § 404.1572.  Earnings that exceed a certain amount, as specified in the
20  regulations, create the presumption of substantial gainful activity.   20 C.F.R. §§ 404.1574,
21  404.1575(c); *see also* Keyes v. Sullivan, 894 F.2d 1053, 1056 (9th Cir. 1990); Lewis, 236 F.3d at
22  515-16.  The plaintiff may rebut this presumption with evidence of her inability to perform the job
23  well, without special assistance, or for only brief periods of time.[6]  Keyes, 894 F.2d at 1056; *see*
24  *also* 20 C.F.R. § 404.1573.

25

26          Special conditions are those that "take into account [the] impairment."  20 CFR § 404.1573.

27  _____

28          [6]  Plaintiff does not contest the ALJ's finding that plaintiff engaged in substantial gainful
   activity between February 16, 2010, and May 14, 2010.

Factors that may show a plaintiff worked under such conditions may include the following:  (1) she required and received special assistance from other employees in performing work; (2) she was allowed to work irregular hours or take frequent rest periods; (3) she was provided with special equipment or was assigned work especially suited to the impairment; (4) she was able to work only because of specially arranged circumstances, such as persons preparing for or getting plaintiff from work; (5) was permitted to work at a lower standard than other employees; or (6) she was given the opportunity to work due to family relationships, past association with an employer or the employer's concern for the plaintiff's welfare.  *Id.*  At this and at all stages of the sequential evaluation, the ALJ must make full and detailed findings of fact that are essential to the ALJ's conclusion so that a reviewing court may determine the basis for the decision and whether substantial evidence supports the Commissioner's decision. <u>Lewin v. Schweiker</u>, 654 F.2d 631, 634-35 (9th Cir. 1981).

In her testimony and other documents, plaintiff explains that from February 1, 2010, through February 15, 2010, she was working full time. (A.R. 136.) On February 4, 2010, she was prescribed supplemental oxygen, and it arrived on February 12, 2010.  (*Id.* 131, 132, 171). However, plaintiff found that rolling the portable oxygen tank to work was "extremely fatiguing," and on February 15, 2010, she and her physician made the decision that working was not advisable. (*Id.* 131, 169, 171.)  From February 16, 2010, therefore, she started working part-time, seeing 15 clients per week, while reducing her client load and closing out files. (*Id.* 132, 171.) In May 2010, plaintiff was working approximately eight hours per week, seeing eight to 12 clients, some of whom she was court ordered to see. (*Id.* 134, 137.) As of July 2010, she was working only five hours per week. (*Id.* 171; Joint Stip. at 19.)  Plaintiff asserts that, during this time, she "needed and got special help from other workers in doing [her] job"; was "given special equipment or . . . work that was suited to [her] condition"; was allowed to work at a lower standard of productivity; worked for a relative, her husband; worked irregular hours or took frequent rest periods; worked fewer hours; got different pay; and although the other therapists in her practice did their own scheduling, a secretary was hired to help her. (A.R. 134-35.)

1  Plaintiff also states that she was not making enough from her practice to cover her half of the

2  expenses, including rent and malpractice insurance, but she drew enough salary to be able to

3  cover the bills   (*Id.* 137, 157.)  She also indicated that some of the income she received in 2010

4  was from patients' outstanding bills from an earlier time period.  (*Id.* 48.)

5

6       While the regulations provide that a claimant's work history is relevant in determining

7  whether he or she has engaged in substantial gainful activity (*see, e.g.*, 20 C.F.R. § 404.1571),

8  the Ninth Circuit has made clear that a claimant should not be penalized for attempting to work

9  due to economic necessity, notwithstanding the claim that he or she was disabled at that time.

10  Lingenfelter v. Astrue, 504 F.3d 1028, 1037 (9th Cir. 2007) ("It does not follow from the fact that

11  a claimant tried to work for a short period of time and, because of his impairments, *failed*, that

12  he did not then experience pain and limitations severe enough to preclude him from maintaining

13  substantial gainful employment."); *see also* Perkins v. Astrue, 535 F. Supp. 2d 14560, 1453 (9th

14  Cir. 1984) (adverse credibility determination supported by finding that claimant engaged in

15  substantial gainful activity after the alleged onset date).  Indeed, the Ninth Circuit has suggested

16  "that similar evidence that a claimant tried to work and failed actually supported his allegations

17  of disabling pain."  *Id.* (citing Fair, 885 F.2d at 604); *see also* Rosario v. Sullivan, 875 F. Supp.

18  142, 146 (E.D.N.Y. 1995) (holding that substantial evidence did not support the ALJ's decision that

19  claimant was not disabled, in part because claimant's unsuccessful work attempt weighed in favor

20  of a disability finding).

21

22       Here, the record indicates that, in early 2010, Petitioner worked part-time and drew a

23  salary above what she was bringing into the corporation owned by her and her husband in order

24  to pay her share of the bills.  (A.R. 137, 157.)  The record also demonstrates that, in February

25  2010, she stopped taking any new patients and started closing her practice.  (*Id.* 157.)  She

26  explained that this took time, because she had to refer her clients to other therapists and "also

27  manage [her] custody cases."  (*Id.* 137, 157.)  She also provided information regarding special

28  accommodations that were made during 2010 to enable her to close out her practice.  (*Id.* 134-

35.)  Plaintiff ultimately stopped working altogether as a result of her impairments and the side effects caused by her medication, which include grogginess, memory and concentration problems, and difficulty thinking.

Although the ALJ briefly mentioned that plaintiff had received "special work conditions" during 2010, when she worked at substantial gainful levels after her alleged onset date, the ALJ did not acknowledge, in using this as a factor to discredit plaintiff's complaints, plaintiff's testimony: that at least a portion of her salary was motivated by economic necessity; the nature and extent of the accommodations provided enabled plaintiff to close out her practice in a professional manner; and that plaintiff ultimately terminated her employment due to her impairments.  Plaintiff did not try to hide the fact that she received a salary during this period or make inconsistent statements regarding her work history.   Instead, she admitted that she continued working part-time to transition her clients to other therapists without abandoning them.

On remand, the ALJ should take these and any other relevant factors into account in making her credibility determination.  The ALJ may not use plaintiff's part-time work between February 16, 2010, and May 14, 2010, as the sole basis for finding plaintiff's testimony not credible and must either credit plaintiff's subjective symptom testimony or provide clear and convincing reasons why plaintiff's testimony is not credible.

### B.   Assessment Of Plaintiff's RFC

Plaintiff also faults the ALJ's RFC assessment for failing to take into account the non-exertional limitations caused by plaintiff's pain and medication side effects, which affect her ability to perform her past work as a psychologist.  (Joint Stip. at 13-15, 17-18.)  As stated above, there was evidence in both plaintiff's testimony and the records from plaintiff's treating physicians that: plaintiff's constant pain and multiple medications make her forgetful, groggy, less articulate, and impair her memory, concentration, judgment, and ability to attend to tasks; the morphine

prescribed for her precludes her from driving or thinking coherently and worsens her hypoxia; and the ketamine prescribed for her creates perceptual disturbances.  An ALJ is required to consider all of the limitations imposed by a claimant's limitations, even those that are not severe. Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008).  "Even though a non-severe 'impairment standing alone may not significantly limit an individual's ability to do basic work activities, it may -- when considered with limitations or restrictions due to other impairments -- be critical to the outcome of a claim.'"  *Id.* (quoting Social Security Ruling 96-8p (1996)). Where the ALJ has properly considered all of the limitations for which there is record support, however, the ALJ's RFC determination will not be overturned so long as the ALJ applied the correct legal standard and the RFC assessment is supported by substantial evidence.  *See* Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005).

The ALJ found that plaintiff's pain, medication side effects, and somatoform disorder precluded plaintiff from work at unprotected heights, jobs requiring hypervigilance, and jobs in which she would responsible for the safety of others.  (*See* A.R. 28 ("In light of the claimant's combination of physical impairments as well as the side effects from her extensive medication regimen [and somatoform pain disorder], the limitations described in the [RFC] are reasonable and well supported.").)  However, the record contains substantial evidence that plaintiff's mental limitations are significantly more extensive than the ALJ acknowledged in her assessment of plaintiff's RFC.  In particular, the ALJ failed to include any limitations addressing plaintiff's deficiencies in memory, concentration, and judgment, despite plaintiff's testimony and her treating physician's statements that, as a result of her impairments, pain, and medications, plaintiff was forgetful, had difficulty attending to tasks (particularly while working eight-hour days), and had trouble concentrating on her clients.  Accordingly, on remand, the ALJ shall address all of plaintiff's non-exertional limitations arising from plaintiff's physical pain and medication side effects in her assessment of plaintiff's RFC.

### III.   Remand Is Required.

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion.  Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000).  Under the credit-as-true rule, a district court should remand for an award of benefits when the following three conditions are satisfied:  "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand."  Garrison, 759 F.3d at 1020.  The third of these conditions "incorporates . . . a distinct requirement of the credit-as-true rule, namely that there are no outstanding issues that must be resolved before a determination of disability can be made."  Id. n.26; *see also* Harman, 211 F.3d at 1179-81 (where there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate).

As indicated above, the Court has found that reversible error occurred.  Because outstanding issues must be resolved before a determination of disability can be made, and it is not entirely clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate.[7]

On remand, the ALJ must give the opinions of Drs. Bhatia and Guzman, plaintiff's treating physicians, their deserved weight or give legally sufficient reasons for not doing so.  The ALJ must also credit plaintiff's subjective symptom testimony or provide clear and convincing reasons why

---

[7]   The record does, however, raise serious questions about whether an individual with plaintiff's multiple, significant disabilities and severe medication side effects could perform her past relevant work or any other work on a sustained eight-hour-a-day/40 hours per week basis.

26

plaintiff's testimony is not credible.   Finally, the ALJ also must discuss any non-exertional limitations caused by plaintiff's pain and/or medication side effects.

## CONCLUSION

Accordingly, for the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

DATED: March 31, 2015

_Margaret A. Nagle_
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE

27